UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HEATHER JOHNSON; ROBERT JOHNSON;<br><br>            Plaintiffs,<br>v.<br><br>UNITED STATES OF AMERICA,<br><br>            Defendant. | Case No. 11cv1378 JM(MDD)<br><br>STATEMENT OF DECISION |

On December 8, 2008, a United States Marine Corps F/A 18D Hornet fighter jet crashed into the San Diego residential community know as University City. The crash, which was widely publicized at the time, resulted in several deaths suffered by one family[1] and substantial property damage to a number of homes in the area.

Due to the negligence of military personnel, the United States admitted sole liability for the crash. In this case, plaintiffs are Robert and Heather Johnson, father and daughter, who were in their University City home, located on Huggins Street, at the time of the crash.  Aircraft debris, including a jet engine, rained down on their home and front yard.  Shocked by this event, plaintiffs fled from the rear of their home to a neighbor's house nearby.

---

[1] The surviving members of the Yoon family sued the government for the wrongful death of four family members and recovered damages following a brench trial and decision of this court in Don Yoon, et.al. V. United States of America, 2011WL6826662 (S.D.Cal.).

Both Plaintiffs suffered from smoke inhalation and were transported to a hospital where they were each evaluated and released when it was determined no physical injuries, aside from the inhalation of smoke and fumes, were sustained.

The parties have represented that economic damages have been resolved[2] and that the sole issue before the court is the amount of reasonable compensation to be awarded to each of the plaintiffs for their respective post-traumatic emotional injuries.

A three-day bench trial pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§2671 - 2680 began on October 9, 2012 and concluded on October 11, 2012 with the arguments of the parties. Plaintiffs have requested damages of $350,000 for Heather Johnson and $300,000 for Robert Johnson, while the government contends an award in the "tens of thousands of dollars," would be reasonable.

After consideration of all the evidence from the parties, as well as the relevant law and arguments, the court issues the following Statement of Decision.

**Evidentiary Record**

The following summarizes the testimony of the witnesses:

I.  The Plaintiffs

   A.  Robert Johnson

Robert Johnson, a 57 year old gentleman with substantial experience in inventory management, was unemployed at the time of the accident, actively seeking employment, and engaged in volunteer activities principally with the Navy and Coast Guard.

As Mr. Johnson was talking to his daughter, Heather, in the family living room, he heard two impacts and observed flaming wreckage roll past the front of the house, some of which collided into Heather's vehicle. Mr. Johnson grabbed Heather and they retreated out the rear of the home while debris struck the home. As Mr. Johnson was retreating, he observed the Yoon home nearby engulfed in flames, and could feel the heat emitted from the crash. As he and Heather ran from the scene to a neighbor's home down the street, Mr. Johnson's lungs hurt from the smoke.

After leaving his daugher with a neighbor, Mr. Johnsn then went to the home of his mother-in-law, located across the street from his own home, to check on her well-being. Thereafter, Mr. Johnson

---

[2]The exception would be future medical care, if any, for psychological counseling.

considered checking on the jet engine, which he initially thought was the aircraft's cockpit, but realized he could do nothing to assist any victims including any occupants of the Yoon residence.

Mr. Johnson returned to his daughter's location and eventually he and Heather were transported to an area hospital for evaluation and treatment. Mr. Johnson suffered lung pain which gradually dissipated over a few weeks. Mr. Johnson testified that he was emotionally shaken over the traumatic experience and felt he "didn't do enough because people didn't survive".

Over time, Mr. Johnson has suffered from sleep interruption, and recurring dreams and visions. He relives the trauma during sleep as he views the crash "from different perspectives". Mr. Johnson still suffers from some symptoms, including intrusive recollections. His relationship with his wife has suffered as they talk less, and he currently feels he is on a "plateau" with less energy than before and "fatigue from the anxiety."

After the crash in 2009, Mr. Johnson was able to return to work and has since been employed and has continued with his volunteer activities. With respect to his daughter, Heather, Mr. Johnson feels she is getting her life back together, but still relives the event and is "pretty jumpy."

At one point, in 2010, Mr. Johnson decided to seek counseling because he was "jumpy" and "upset". Intellectually, Mr. Johnson knew he was not at fault for being unable to help others, and this point was highlighted by the licensed clinical social worker he consulted over approximately 5-6 sessions.

B. Heather Johnson

Ms. Johnson's recollection of the crash was consistent with her father's testimony. Essentially, Ms. Johnson was at home with her young son and planning her day with her father at the time of the crash. After running to a neighbor's home down the street, Ms. Johnson didn't remember too much, although she does recall being in a state of panic, being at the hospital for evaluation, and being scared as a result of not knowing what would happen in the days following the crash.[3]

Ms. Johnson, who worked as a cashier at the Marine Corps Air Station at Miramar ( Miramar Air Station or MCAS), the landing destination for the aircraft that crashed, was off work for a few weeks but

---

[3]The Johnson family was relocated to temporary lodging at the expense of the government while damage to their home was repaired.

then returned to work.  Ms. Johnson had trouble concentrating for 2 - 3 months and was "anxious and nervous that it could happen again." She saw a counselor at MCAS to help with the anxiety. Ms. Johnson has tried to stay away from her home, or to remain in the rear of the home, when she is present. Generic Zoloft helps with her anxiety.

At present, Ms. Johnson sleeps 8 hours at night, but will wake during the evening. She does not feel any better than she did in 2008 and is "worried and scared when [she] hear[s] jet noise at work or over her house."  This seems to occur every few minutes. Ms. Johnson testified her energy level is less and she is not as close to her mother as before. According to her parents, she is "snappy."

Ms. Johnson, who was 24 at the time of the event, and a divorced single mother, has lived with her parents at the family home on Huggins Street on and off (or "in and out") over the recent years. At present, Ms. Johnson is acquiring training as a massage therapist.

When asked by the court why she continued to work at MCAS for a significant period of time after the event and live at home with her parents, Ms. Johnson responded that she sought other employment and continued to live with her parents because of financial necessity. Ms. Johnson did acknowledge that after the crash of December 2008 she attended the 2009 and 2010 air shows at MCAS where the Navy Blue Angels performed.

II.    The Experts

   A.    Barbara Huff-McTyre

Ms. Huff-McTyre, a licensed clinical social worker (LCSW) familiar with post traumatic stress disorder (PTSD) saw Mr. Johnson through a work-sponsored employee assistance program at the suggestion of his wife due to his irritability.

Ms. Huff-McTyre saw Mr. Johnson for five sessions between March and May of 2010 and reached a diagnosis of PTSD related to the air crash and Mr. Johnson's guilt resulting from his inability to "save people."  Ms. Huff-McTyre testified to Mr. Johnson's hypervigilance, irritability, sleep disruptions, detachment from relationships and detached presentation.  Ms. Huff-McTyre acknowledged that Mr. Johnson had stepped up his employment search and volunteer activity so he wouldn't think of the crash.

At the end of the counseling session, Mr. Johnson said he was feeling better overall and it seemed to Ms. Huff-McTyre that he had responded well with improvement in symptoms. Future therapy needs were unpredictable at that point.

      B.      <u>John David Garmon, M.D.</u>

Dr. John Garmon, a well-qualified board-certified forensic psychiatrist, initially evaluated Heather Johnson at the request of her attorney in April 2009. Dr. Garmon obtained a complete history from Ms. Johnson and completed his evaluation with the issuance of a report. (Exh.6)

Relying on his substantial experience with PTSD patients, consisting of veterans in a hospital setting and private individuals, Dr. Garmon originally diagnosed Ms. Johnson as suffering from anxiety disorder, not otherwise specified (NOS). Dr. Garmon felt Ms. Johnson did not have clear enough symptoms for any specific disorder, including PTSD and, therefore, diagnosed general anxiety disorder. Specifically, Dr. Garmon concluded Ms. Johnson did not meet the "C", "D", or "F" criteria of PTSD as set forth in the DSM-IV. She did not meet the "C" criterion which deals with avoidance of the event, and lesser involvement in significant life activities, or the "D" criterion because increased arousal symptoms did not rise to the required level. Finally, Ms. Johnson did not meet the "F" criterion which evaluated difficulty with social and other spheres of life. Importantly, Dr. Garmon was not of the opinion Ms. Johnson was suffering from a pre-existing anxiety disorder due to her reported history of child molestation and marriage difficulties.

Dr. Garmon next saw and evaluated Ms. Johnson more than three years after the initial consultation, in July, 2012. After reviewing litigation documents and discovery, including depositions, hospital records, as well as the report of Dr. James E. Rosenberg, the government's retained forensic psychiatrist, who concluded Ms. Johnson suffered an emotional injury in the form of PTSD, Dr. Garmon now felt Ms. Johnson met the full criteria of PTSD. Dr. Garmon re-evaluated Ms. Johnson as meeting the "C" criterion of the DSM-IV due to a marked lessening of activity in work and socially, the "D" criterion with hyper-vigilance and increased arousal, and the "F" criterion with impairment in work and interpersonal functioning.

In 2012, Ms. Johnson "presented differently" and was more psychologically symptomatic. Her updated diagnosis of PTSD was separate and apart from Ms. Johnson's pre-existing ADD and limited

intellectual functioning. Dr. Garmon concluded that 12-24 months of psychotherapy, with weekly sessions at a total cost of $12,000 - $24,000 would be of assistance to Ms. Johnson.

      C.      James E. Rosenberg, M.D.

Dr. James Rosenberg, a highly qualified board-certified forensic psychiatrist evaluated both Plaintiffs at the request of the government. Dr. Rosenberg, a member of the U.C.L.A. Medical School faculty specializing in forensic psychiatry with extensive experience in PTSD both from treatment and publication perspectives, provided his opinions for both Plaintiffs. Importantly, Dr. Rosenberg administered psychological testing of both Plaintiffs.

With respect to Robert Johnson, Dr. Rosenberg concluded Mr. Johnson experienced an emotional injury consisting of a full diagnosis of PTSD as well as a major depressive disorder of moderate severity. Over a period of a few months, Mr. Johnson experienced substantial improvement such that at present he suffers anxiety of a PTSD type with his depressive disorder in remission. Although Mr. Johnson's guilt over not saving his neighbors is his primary symptom, his interaction with people shows improvement and there is no significant impairment in major life functions such as work and family. Mr. Johnson presents as normal without significant anxiety or depressive symptoms. However, the residual symptoms still require some treatment with 12 - 30 psychological sessions recommended at $250 per session.

With respect to Heather Johnson, Dr. Rosenberg concluded she suffers from an unspecified anxiety disorder as a result of earlier traumas and significant life stressors including broken romantic relationships, being a single mother, and financial concerns. (These finding were not included in Dr. Rosenberg's report, but reached within a few weeks of trial.) Dr. Rosenberg further concluded Ms. Johnson suffered an emotional injury in the form of PTSD caused by the jet crash of December 2008. Her symptoms of intrusive memories and re-experiencing the event, fearfulness of hearing jet airplanes, hyper-arousal, sleep difficulties, and avoidance of the topic in discussion, are all consistent with PTSD, but improving. Because symptoms have markedly improved, PTSD to a mild degree is the proper diagnosis based on some residual numbness and avoidance, but no significant functional impairment.

Although Ms. Johnson's emotional injury substantially impaired her for the first few months, she has improved markedly and her prognosis is positive with full functioning in the family and work

spheres. Dr. Rosenberg is of the opinion, based on Ms. Johnson's deposition testimony, she has returned to baseline before the event with pre-existing stressors still present. However, over time, Ms. Johnson may experience some internal emotional distress upon thinking of the jet crash. Therapy consisting of 12-24 months of weekly sessions combined with generic Zoloft @ $10/month are recommended for Ms. Johnson.

### III.     Other Witnesses

#### 1.     Linda Johnson

Robert Johnson's wife, Linda Johnson, testified that before the accident her husband was friendly, happy, and "a sweet and caring man" with a good sense of humor. They did not argue very much. Mr. Johnson enjoyed friends, sports, and his Midway volunteer work. Although Mr. Johnson was worried about being unemployed, he slept well and was working hard to get another job before the crash. Following the accident, Mr. Johnson became less talkative, was withdrawn, and became "angrier easier." Their marital relationship changed as they did less together and spoke less. Now, Mr. Johnson is away from the home most of the time, either at work or on the Midway.

Heather Johnson's personality has also changed since the accident, from being happy, personable, friendly and loving to being anxious, easily upset, irritable and argumentative.

Ms. Johnson testified to her daughter's pre-existing stressors in 2008, consisting of a pending divorce, single motherhood, and financial concerns. Before the accident, Heather Johnson had a learning disability, ADD without hyperactivity, but was able to work and take care of her son. She had no problems with sleep or energy.

#### 2.     Geneva Ozenbaugh

Ms. Ozenbaugh, Heather Johnson's friend since childhood, testified that before December 2008, Ms. Johnson was outgoing, sociable, bubbly and spent time with her friends. After the accident, Ms. Johnson had more anxiety and was "more aware of her surroundings." She became more quiet and laid back. Ms. Ozenbaugh was not aware of any difficulty Ms. Johnson was having with friends; she just became a little more impatient, did not like the sound of airplanes and did not want to talk about the accident.

**Legal Standards**

This action was brought under the FTCA with admitted liability by the United States government for the emotional injuries sustained by Robert and Heather Johnson as a result of Plaintiffs witnessing a United States Marine Corps F/A 18D aircraft crashing in the area of Plaintiffs' home and the aftermath of the crash.  Although Plaintiffs suffered from smoke inhalation over a period of weeks, the sole issue before the court is the amount of reasonable compensation to be awarded for Plaintiffs' emotional injuries and any future medical care reasonably necessary.

In California, the measure of damages for the injuries claimed by Plaintiffs is addressed by statute and case law. The parties recognize that Cal.Civ.Code §3333 provides the proper measure of damages to be that "amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not."  Such compensation is recoverable for past and future suffering which is reasonably possible to be experienced. Future medical costs are also recoverable if they are reasonably certain to be incurred.

**Analysis**

It is abundantly clear to the court that both plaintiffs sustained emotional injuries caused by the December 8, 2008 crash of a United States Marine Corps F/A 18D Hornet fighter jet in immediate proximity to their home. The incident was so close that airplane parts rained down upon their home and Plaintiffs felt the effects of smoke and fume inhalation as they fled from their home. Whether the injuries sustained met all criteria of post traumatic stress disorder as defined by the DSM-IV or consisted of anxiety disorder, not otherwise specified, the injuries were real to Plaintiffs with manifested consequences as discussed further.

Although each plaintiff suffered emotional injury, the resultant manifestations and harms differed in part for the Johnsons.  Although each plaintiff suffered from sleep disturbance and recurring images from the crash as well as some withdrawal, Mr. Johnson has primarily suffered from slowly dissipating guilt associated with his inability to rescue neighbors who perished in the crash.

Although Mr. Johnson has intellectually accepted the reality that there was nothing he could have done to save lives, the guilt he has experienced has somewhat hindered him from enjoying the normal rhythms of his life, particularly as they have related to his marriage and personal relationships.

Ms. Johnson, on the other hand, has experienced anxiety, especially when hearing jets flying overhead and feels her relationship with her mother has suffered. She has been told she is "snappy", irritable and easily upset, notwithstanding the testimony of her close friend, Geneva, who has observed Ms. Johnson become more mellow.

Although both plaintiffs suffered significant levels of emotional harm for the immediate period of several months following the crash, their symptoms have gradually lessened. Mr. Johnson's damages have been greatly mitigated through his intellectual acceptance of the proposition that his guilt was unwarranted. Ms. Johnson's difficulties with anxiety associated with jets overhead have been lessened and mitigated by her exposure over time to overhead jet aircraft at home and at work for a period of several months after the accident. Moreover, Ms. Johnson's willingness to observe the Navy's Blue Angels perform, virtually from ground zero at MCAS underscores that the December 2008 crash has less of an impact on Ms. Johnson at present.

In light of the foregoing analysis, monetary damages for each plaintiff on a sliding scale for the four year period from December 2008 to the present are warranted. Each plaintiff is entitled to damages of $90,000 for past emotional injuries to the present. The court has arrived at this figure by finding that $30,000 represents reasonable compensation for the first year for each plaintiff with reasonable compensation gradually reduced for each year thereafter to the present.

Next, the court finds the additional sum of $15,000 for each plaintiff for future emotional damages while undergoing the prescribed period of therapy recommended by the psychiatric experts would be reasonable.

Finally, the court awards the sum of $12,000 to plaintiff Heather Johnson for reasonable future medical expenses consisting of therapy and medication recommended by Dr. Garmon. Although plaintiff Robert Johnson eschewed therapy following a handful of sessions with LCSW Huff-McTyre and his realization that his guilt was baseless, Dr. Rosenberg's opinion that Mr. Johnson could benefit from 12-30 therapy sessions at $250/session seems reasonable to reinforce the work already done and the progress already achieved. Accordingly, the court awards $4,000 for reasonable future medical expenses for Mr. Johnson while aware of Mr. Johnson's stoic nature and past aversion to prolonged therapy.

**Conclusion**

Based on the applicable law, the evidentiary record before the court, and the foregoing analysis, the court awards the following sums as fair and reasonable compensation for the emotional injuries sustained by Robert and Heather Johnson as a result of the December 8, 2008 air crash:

1. To plaintiff Robert Johnson, the sum of $105,000 for past and future non-economic damages;

2. To plaintiff Robert Johnson, the sum of $4,000 for economic damages;

3. To plaintiff Heather Johnson, the sum of $105,000 for past and future non-economic damages;

4. To plaintiff Heather Johnson, the sum of $12,000 for future economic damages.

Plaintiffs are to prepare a final judgment in accordance with this Statement of Decision.

IT IS SO ORDERED.

DATED: November 13, 2012

_____
Hon. Jeffrey T. Miller
United States District Judge